# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 23-1765V

|  |  |
|---|---|
| JONATHON LEE JORDAN,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: May 1, 2026 |

*William E. Cochran, Jr., Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN , for Petitioner.*

*Ryan Pohlman Miller, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION[1]

On October 10, 2023, Jonathon Lee Jordan filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a right-sided shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus vaccine received on June 10, 2021. *See generally* Pet., ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. As explained below, I find that Petitioner has provided insufficient proof of severity of injury, as required for all Vaccine Act claims. *See* Section

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

11(c)(1)(D)(i).[3] Petitioner cannot therefore establish entitlement to damages, and his claim is **DISMISSED.**

## I.    Relevant Procedural History

Following medical review of the claim, Respondent submitted his Rule 4(c) Report, arguing that injury severity – a threshold requirement for any claim filed in the Program – had not been demonstrated based on the record as it stands. *See* Rule 4(c) Report at 12-18, ECF No. 18. I thereafter issued an Order to Show Cause in October 2024, noting that Respondent's severity objection was very likely to prevail unless Petitioner could better substantiate that his injury persisted for more than six months post-onset. Order at 2, ECF No. 24.[4]

In response, Petitioner submitted updated medical records (including those outside the pertinent gap in care relevant to resolving the severity issue), additional declarations, and a written brief. ECF Nos. 25-29. Respondent filed a responsive brief thereafter. ECF No. 30 at 23. Petitioner replied asserting that his medical records can substantiate his claim, and thus his case should not be dismissed. ECF No. 31. The issue of severity is now ripe for adjudication.

## II.    Contemporaneous Medical Records

On June 10, 2021, Petitioner was brought to the emergency department ("ED") for a "motorcycle crash." Ex. 2 at 22. His complaints and physical findings pertained to head and facial lacerations, abrasions, and a broken left clavicle – including tenderness of the left shoulder and a large abrasion to his left elbow. *Id.* at 23. Petitioner was discharged with a prescription for Tylenol/ibuprofen and was told to follow up with his primary care provider. *Id.* at 24. Petitioner at this time received a Tdap vaccine in his right arm.[5] *Id.* at 85.

---

[3] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae.

[4] In my Order to Show Cause, I also addressed Respondent's argument that Petitioner had not proven he received the subject vaccination in the right arm, as alleged, and stated that Petitioner would likely overcome Respondent's objections regarding this element if he were to prevail on the threshold severity issue. *See* Order at 3 (citing Respondent's Rule 4(c) Report at 19-20).

[5] As noted above (*supra*, note 4), the vaccination record reflects – in a computerized entry – that Petitioner received the subject vaccination in his left deltoid. Ex. 2 at 85. However, the bulk of evidence supports the conclusion that he more likely than not received the vaccination in his right arm, as alleged. *See,* e.g., Ex. 3 at 6; Ex. 18 at 1.

Three days later (June 13, 2021), Petitioner submitted a Vaccine Adverse Event Reporting System ("VAERS") report. Ex. 18 at 1. Petitioner noted that he received the subject vaccination on June 10, 2021, in his right arm, and that he experienced the onset of symptoms one day later, on June 11, 2021. *See id.* Specifically, Petitioner reported that he experienced fatigue, vomiting, and injection site pain; he also described his current illness as a "collar bone fracture, road rash wounds all over including head from motorcycle fall." *Id.*

The following day (June 14, 2021), Petitioner had a telemedicine visit for "wound care and right shoulder pain 4 days after scooter[6] accident." Ex. 3 at 6. Petitioner reported that he was seen and treated in the ED for abrasions and a left clavicle fracture, and at that time, "[g]ot a Tdap right deltoid and has pain at site but not warm or red[, h]urts to lift arm[.]" *See id.* The treater's assessment included "[m]ultiple abrasions in healing phase[,] right deltoid pain after immunization[,] left clavicle fracture, [and traumatic brain injury]." *Id.* Petitioner was told to follow up as scheduled and that his "deltoid pain should resolve[,] can use ice and Motrin[,] Bactroban ointment if needed[.]" *Id.*

There is a subsequent *eight-month* gap in Petitioner's treatment for right shoulder pain (from June 2021 to February 2022), during which Petitioner attended approximately 15 medical encounters, but those records do not document *any* concerns, findings, or treatment of a right shoulder injury, let alone one alleged or reported to have been associated with the subject vaccination. *See,* e.g., Ex. 16 at 9-11, 50-56 (June 18 and 29, 2021 encounters for wound care); Ex. 2 at 6-8 (a June 23, 2021 vascular examination of the lower extremities for ulcers); Ex. 3 at 9 (a July 7, 2021 telemedicine visit for nausea and vomiting, plus wound care); Ex. 16 at 68-89, 168 (July 13 and August 10, 2021 encounters for wound care); Ex. 11 at 12-16 (an August 27, 2021 encounter for an earache, tooth pain, and asthma prescription refill); Ex. 14 at 3-4 (a September 1, 2021 encounter for ear and facial pain); Ex. 10 at 404-08 (a September 3, 2021 encounter for an abscess and ear pain, with a normal examination of the extremities); Ex. 3 at 12 (a September 6, 2021 telemedicine encounter for a concern of scabies); Ex. 13 at 21-23 (a December 23, 2021 encounter for potential STI exposure); Ex. 8 at 16-18 (a January 22, 2022 encounter for an upper respiratory infection); Ex. 8 at 19-20 (a January 23, 2022 encounter for nasal congestion); Ex. 3 at 18 (a February 18, 2022 telemedicine encounter for a sinus infection and refill of asthma prescription).

---

[6] This is the only reference to Petitioner's involvement in a "scooter" accident. In other records, Petitioner's treaters refer to Petitioner's involvement in a "motorcycle" crash. *See,* e.g., Ex. 2 at 22. Petitioner himself describes the vehicle differently on separate occasions, including as a "motor bike" or a "motorcycle." *See* Ex. 1 (Petitioner's affidavit describing his "motor bike crash"); *see also* Ex. 18 at 1 (Petitioner's VAERS report describing a "motorcycle fall"). The vehicle thus appears to be akin to a motorcycle.

Then, on February 28, 2022,[7] Petitioner sought care at the ED following a fall on his right side while walking his dog. Ex. 5 at 6. Specifically, Petitioner reported "falling directly onto his right side of his face[,]" some chest discomfort, along with "some right shoulder discomfort and a mild 1-2 out of 10 headache." *Id.* at 9. A physical examination revealed facial bruising and abrasions containing gravel, plus full range of motion ("ROM") in the right shoulder but some tenderness with movement that radiated down the arm. *Id.* at 10-11. The treater's assessment noted that Petitioner "complain[ed] of some right shoulder pain that appears to be chronic possibly worsening after his fall." *Id.* at 12. The treater did not elaborate on Petitioner's "chronic" pain, nor did Petitioner link his right shoulder pain to the June 2021 vaccination during this visit.

On April 6, 2022, Petitioner returned to the ED reporting a one-week history of lethargy and a headache, plus lower extremity warmth and swelling for the past 24 hours. Ex. 10 at 451. The clinical impression was left leg cellulitis, for which he spent one night in the hospital. *Id.* at 451-56. During that time, Petitioner could move all extremities but made no mention to his right shoulder, specifically. *Id.* at 459.

Later in April (on April 26, 2022), Petitioner went back to the ED for his right elbow after sustaining another fall. Ex. 15 at 25. He reported that he tripped while walking and landed on his right elbow; he could "move his arm with full [ROM]," but was "concerned with edema and discoloration to it." *Id.* An examination of the right elbow was performed, and revealed swelling, effusion, and tenderness. *Id.* at 28. The treater assessed Petitioner with a contusion of his right elbow and traumatic bursitis; an x-ray was normal. *Id.* at 29. Petitioner did not mention his right shoulder or his 2021 vaccination at this visit.

Thereafter, on May 12, 2022, Petitioner saw an orthopedic nurse practitioner for a consultation of his right elbow pain. Ex. 6 at 7, 9. He reported that "on 4/23/2022 he was in his yard . . . yellowjacket was swarming him so he ran . . . fell landing completely on the lateral aspect of his right elbow" and swelling occurred immediately. *Id.* at 9-10. He was concerned about bruising and swelling. *Id.* at 10. An examination was limited to the "right upper extremity" and the assessment included right elbow pain and a traumatic hematoma of the right elbow. *Id.* Petitioner also noted he had "been having some shoulder pain" and "would like to see [a] shoulder specialist." *Id.*

On June 15, 2022, Petitioner called an orthopedist to schedule an appointment (to be held on July 5, 2022), for "rt [sic] shld [sic] pain[.]" Ex. 21 at 80. The appointment was rescheduled for July 11, 2022, but then cancelled after Petitioner mistook the time of the

---

[7] Prior to this visit (on February 23, 2022), it appears that Petitioner signed a consent form for the collection of his medical records by counsel. Ex. 2 at 2. Then, on March 25, 2022, Petitioner's counsel collected Petitioner's medical records in connection to a matter entitled, "Jonathon Lee Jordan v. DHHS." *Id.* at 1. It thus appears Petitioner had retained counsel by late February of 2022.

appointment. *Id.* at 72. After rescheduling the appointment again for August 2, 2022, Petitioner did not attend the encounter; it was cancelled after he was 30 minutes late. *Id.* at 71. Petitioner's August 23, 2022 visit was also cancelled after Petitioner was a "no show." *Id.* at 68.

It was not until August 31, 2022[8] (now over 14 months since first seeking care for shoulder pain attributable to the subject vaccination), that Petitioner returned to care for right shoulder pain he reported was vaccine-related, and had allegedly persisted for more than a year. Ex. 7 at 22-33. Petitioner now claimed that he "thinks the pain came from the Tdap vaccination" (that he felt "coerced" into receiving), and that the "pain developed within an hour or so and has not let up since." *Id.* Petitioner noted he was "hesitant to seek medical care because he does have a history . . . of opiate addiction and feels some distress towards physicians." *Id.* He also noted that he had "discussed this shoulder issue with his psychiatrist who recommended he see a specialist." *Id.*

The orthopedist "tried to address [Petitioner's] concerns about the possibility of his tetanus vaccine as it relates to his shoulder pain[;]" and although the treater could not "completely rule it out as a possibility[,]" the treater noted Petitioner "had a fairly traumatic high-energy motorcycle accident the same time which could have agitated his right shoulder even though his left clavicle was broken." Ex. 7 at 33. The treater recommended Petitioner undergo treatment with physical therapy for his adhesive capsulitis, but Petitioner never attended such treatment. *Id.* Petitioner did not attend any additional treatment thereafter.[9] No additional medical records have been filed.[10]

### III.    Witness Affidavits and Declarations

Through witness declarations (some specifically drafted after my Order to Show Cause highlighting the specific deficiencies in the record related to severity), Petitioner maintains that he can establish the Act's six-month requirement.

---

[8] The same day as this visit, Petitioner's counsel submitted an additional medical record request to this provider (Ex. 7 at 2-3), further supporting the conclusion that Petitioner had retained counsel by this date.

[9] However, Petitioner contacted his orthopedist on September 1, 2022, to state that he reviewed the August 31st visit notes and wanted to correct the entry to reflect that he only had anxiety with hospitals, not doctors. Ex. 21 at 29.

[10] While Petitioner submitted updated medical records in response to my Order to Show Cause (Ex. 21), such records do not appear to contain new visit notes but rather seem to repeat past medical encounters. The records also contain notations showing that on March 30, 2024, Petitioner made an orthopedic appointment for April 30, 2024, to follow up for his right shoulder, and then it was rescheduled for June 18, 2024, but Petitioner did not ultimately attend this or any additional visits. Ex. 21 at 9, 18.

In his first affidavit (drafted in September 2023), Petitioner generally attests that he began experiencing right shoulder pain within hours of his receipt of the subject Tdap vaccination, and he has "not returned to baseline." Ex. 1 ¶¶ 5, 7.

Petitioner's mother submitted an affidavit on his behalf, also authored in September 2023. Ex. 17.[11] Petitioner's mother attests that "[d]uring the past year" – or dating back to September 2022 – Petitioner had experienced "problems with his use and mobility of his right arm." *Id.* ¶ 28.

Later, and in direct response to my Order to Show Cause, Petitioner and his mother submitted additional declarations (both authored in January 2025). Exs. 24-25. Petitioner attests that his right shoulder pain "continued for six months and beyond" and was present prior to the care he received beginning in February 2022. Ex. 24 ¶¶ 3-7. Petitioner addresses his February 28, 2022 encounter (the first following his eight-month gap in care), and explains that while he sought care due to a fall, he "was still having pain in [his] right shoulder from the June 10, 2021 vaccination prior to the fall[.]" *Id.* ¶ 4. Petitioner did not believe his shoulder was injured from said fall, but he "was hoping to also get treatment for [his] right shoulder pain." *Id.* Likewise, Petitioner explains that when he sought care following another fall on April 26, 2022, he "was still having pain in [his] right shoulder . . . prior to the fall[.]" *Id.* ¶ 5.

Additionally, Petitioner's mother clarifies that Petitioner's "problems and use of mobility of his right arm was not limited to the year preceding September [2023]," the year her prior declaration was authored. Ex. 25 ¶¶ 2-4. Rather, she attests that Petitioner experienced right shoulder pain the day he received the subject vaccination and "[t]he pain never went away" but "continued . . . through the date [she] signed [her] September 28, 2023 affidavit." *Id.* ¶¶ 5-6. No additional witness declarations or affidavits have been filed.

## IV.     Statements from Other Medical Providers

While not contemporaneous medical records *per se*, Petitioner was also in the care of a psychiatrist at the time of his alleged vaccine injury. That psychiatrist has provided statements and records in connection with the instant claim. Exs. 4, 22.

---

[11] Petitioner's mother's affidavit includes a typed copy of her assertions, followed by a handwritten copy repeating the same statements. *See* Ex. 17 at 1-4, 6-11. The affidavit also includes a sketch, seeming to depict Petitioner's mother's vantage point while watching Petitioner receive the subject vaccination. *Id.* at 13. And finally, the affidavit includes a printout of driving directions (of unknown significance), as well as photographs of a man (seemingly Petitioner) in the hospital following an accident. *Id.* at 5, 14-15.

In a June 2, 2022 letter drafted by Petitioner's psychiatrist *directly to Petitioner's counsel* (and filed along with the instant petition), the treater wrote that Petitioner called her on the day of his June 2021 motorcycle accident. Ex. 4 at 1-2. According to Petitioner's psychiatrist, Petitioner told her about his receipt of the subject vaccination at the hospital that day, and stated his belief that the hospital coerced him into receiving it. *Id.* at 2. Additionally, "[a]t his office visit in July 2021," Petitioner "was complaining about pain at the injection site where they gave him a Tdap vaccine." *Id.* The treater wrote that from "August until December of 2021," Petitioner continued to "describe how his right shoulder hurt a lot and thought it was SIRVA[12] from the shot he was given[.]" *Id.* Petitioner's psychiatrist noted that Petitioner did not seek treatment "because he thought they might do surgery or give hum pain meds [sic] and he wanted to maintain his recovery from pain meds [sic]." *Id.*

Additionally, in response to my Order to Show Cause, Petitioner submitted the full treatment records from his visits with his psychiatrist. Ex. 22.[13] Within these records, Petitioner's psychiatrist wrote a note directly addressed to Petitioner's counsel, dated December 2, 2024. *Id.* at 1. The treater wrote that she had received counsel's request for records but that all records (dating back to 2019) had been previously disclosed. *Id.* More so, the psychiatrist explained that she had been treating Petitioner for opiate dependence, anxiety, and ADHD, "not chronic pain[.]" *Id.* (emphasis in original). The treater emphasized that she had "not examined him for and am not treating him for his report of right deltoid & shoulder pain which he associated with a vaccination." *Id.* The records do not contain any mention of or reference to Petitioner's right shoulder pain aside from that entry – although the records contain references to Petitioner's reports of chronic spinal pain in relation to his history of scoliosis, dental pain, and ulcers/lesions on his legs. *See generally id.* at 10-79. No additional evidence has been filed.

## V.    Applicable Legal Standard

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][14] . . . suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential

---

[12] By this time, none of Petitioner's treaters described his injury as SIRVA or assessed him with SIRVA.

[13] The records are also accompanied by a records request from Petitioner's counsel to Petitioner's psychiatrist, dated November 12, 2024. Ex. 23 at 1-2.

[14] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

**Analysis**

I note preliminarily that Petitioner not only had an opportunity to prepare his claim prior to filing, but was put on notice over the matter's duration that severity was an issue to be addressed. Yet even after Respondent submitted his formal position in his Rule 4(c) Report (and my preceding Order to Show Cause), Petitioner has not submitted additional evidence showing that his injury likely persisted for more than six months post onset or established why additional time is merited to do so. Petitioner has thus now had a "full and fair opportunity" to support his position. Vaccine Rule 3(b).

There appears to be no dispute that Petitioner received the Tdap vaccine on June 10, 2021, and he therefore must demonstrate by preponderant evidence that his residual symptoms continued for more than six months thereafter from the onset of his symptoms. *See,* e.g., *Herren v. Sec'y of Health & Hum. Servs.,* No. 13-100V, 2014 WL 3889070, at *2-3 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset). While to date, it has been unnecessary to conclusively resolve whether Petitioner has established that he received the vaccine in the right arm and/or experienced the onset of his right shoulder pain on the same day as his vaccination as alleged, I will *assume arguendo*[15] that he could do so. Petitioner would thus need to establish his shoulder injury was extant as of December 10, 2021 (at the earliest, assuming a same-day onset – common in the case of SIRVA claims).

The record lacks preponderant evidence in favor of that finding. Prior to the significant gap in treatment for right shoulder pain attributable to the subject vaccination (from June 2021 to August 2022), Petitioner had *only one* medical encounter for shoulder pain, via telemedicine on June 14, 2021 – just four days post vaccination. Ex. 3 at 6. While the physician assessed Petitioner with injuries including "right deltoid pain after immunization," the treater felt that the injury "should resolve" and did not recommend any formal treatment for the right shoulder (beyond suggesting conservative measures for pain management, at least partially pertaining to Petitioner's other injuries associated with his motorcycle accident also reported during that visit). *See id.* Thus, not only did Petitioner receive very little in the way of treatment, but he received no recommendation for additional treatment as well as a good prognosis – factors not suggesting the issue likely lingered past this date, absent other evidence.

Thereafter, over the next eight months (June 2021 – February 2022) – and thus encompassing the time of the six-month severity "cut-off" (i.e., December 10, 2021) – Petitioner attended at least *fifteen (15)* medical encounters, both virtually and in-person, with various providers, for concerns including wound care; ulcers; nausea; face, ear, and tooth pains; abscesses; asthma; potential exposures to scabies and an STI; and upper respiratory infection. However, those records do not document *any* concerns, findings, or

---

[15] As previously noted above and described in my Order to Show Cause, the record appears to support the conclusion that Petitioner received the subject vaccination in his right arm, as alleged. *See,* e.g., *supra,* note 4. And, Respondent does not appear to contest Petitioner's ability to establish Table-consistent onset. *See* Respondent's Report at 18-22. The record would otherwise support the conclusion that the onset of Petitioner's post-vaccination shoulder pain occurred likely within one day of vaccination, and thus within 48 hours consistent with the Table. *See,* e.g., Ex. 1; Ex. 3 at 6; Ex. 18. As the issue of severity is dispositive in this case, I do not find it necessary to make a definitive finding as to vaccine situs or Table onset. But for ease of argument here regarding severity, I will assume that a showing of Table-consistent onset and right arm situs have been met.

treatment (either formal or informal, at-home remedies) of a right shoulder injury. And several of these visits were with general practitioners for various aches and pains (e.g., Ex. 11 at 12-16; Ex. 14 at 3-4; Ex. 16 at 68-89), to whom it thus would have been reasonable to mention other musculoskeletal complaints of right shoulder pain if they were continuing, as Petitioner contended.

In addition, Petitioner's explanation for this absence of shoulder pain reference – that he feared medical providers would "compe[l]" him to undergo particular treatments or to take medications (citing his previous addiction to opiates) – is unpersuasive. *See,* e.g., Ex. 7 at 30 (subsequent medical encounter). For the contemporaneous medical records demonstrate Petitioner's willingness to seek medical evaluations for *many* other concerns during the lengthy gap. There is no reason to view the risk of unwanted treatment as limited only to the occasion of raising shoulder pain concerns.

More problematically, the medical records following the long treatment gap do not support the conclusion that Petitioner experienced ongoing symptoms *during* the gap. When Petitioner again sought shoulder pain care on February 28, 2022, he did not link his right shoulder pain to his receipt of the subject Tdap vaccine. Ex. 5 at 6. Rather, the physician noted that Petitioner's right shoulder pain was "possibly worsening" *after a fall onto his right side. See id.* (emphasis added). While the treater documented Petitioner's right shoulder complaint as "chronic," the treater did not reference a specific duration or refer to the vaccine, specifically. *Id.* It is thus highly likely that Petitioner's fall prompted his decision to seek medical care for right shoulder pain on that date.

Petitioner's other visits thereafter also do not provide support for a continuous vaccine injury. For example, in April 2022, Petitioner suffered *another fall on his right side* after tripping in his yard, thus prompting another visit to the ED – but for pain in his *right elbow,* not the shoulder, specifically. Ex. 15 at 25. He then sought follow up care for his right elbow, including an orthopedic visit in May 2022, during which he also supplementally mentioned he had "been having some shoulder pain" and "would like to see [a] shoulder specialist." Ex. 6 at 7, 9-10. Even though Petitioner mentioned right shoulder pain, he *again* did not link this shoulder pain to the subject vaccination or his prior alleged vaccine injury, and he seemingly only brought up this shoulder pain after a fall onto his right side. Petitioner's request for additional treatment with a shoulder specialist does not show a continuation of his original shoulder injury but rather supports a potential alternative factor contributing to his right upper extremity pain (i.e., his falls).

An alternative explanation for the injury is even suggested when Petitioner finally sought care for right shoulder pain *and attributed it to the subject vaccination*, on August 31, 2022. At that time, the orthopedist Petitioner saw noted that while vaccine causality

10

could not be ruled out, Petitioner's "fairly traumatic high-energy motorcycle accident . . . could have agitated his right shoulder[.]" Ex. 7 at 33. Thus, there is ample later evidence undermining vaccine causation entirely for Petitioner's purported ongoing right shoulder injury.

Petitioner's post-gap statements to treaters beginning in February 2022 must also be viewed with skepticism, since it appears that by this time he had already retained counsel. For instance, the record shows that by February 23, 2022, Petitioner had signed an authorization form, granting his counsel permission to collect his medical records; that request was served on facilities on March 25, 2022. Ex. 2 at 1-2. While the decision to pursue litigation does not *per se* render all of a claimant's subsequent efforts at treatment suspect, it does mean the reliability of statements made about fact issues to be adjudicated might be fairly called into question, especially to the extent the statements are not contemporaneous with the event at issue. *Reusser v. Sec'y of Health & Hum. Servs.,* 28 Fed. Cl. 516, 523 (1993) ("written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later"); *Mueller v. Sec'y of Health & Hum. Servs.,* No. 06-775V, 2011 WL 1467938, at *9 (Fed. Cl. Spec. Mstr. Mar. 16, 2011) ("[m]emories are generally better the closer in time to the occurrence reported and when the motivation for accurate explication of symptoms is more immediate."); *Thelen v. Sec'y of Health and Hum. Servs.,* No. 90-22V, 1991 WL 38084, at *11 (Fed. Cl. Spec. Mstr. Mar. 6, 1991) (stating that the pressures of litigation may affect memory).

Special masters have afforded less weight to statements made to treating physicians when made in the context of litigation, or those made after a petitioner began to suspect he might have a Program claim. *See,* e.g., *Rastetter v. Sec'y of Health & Hum. Servs.,* No. 19-1840V, 2023 WL 5552317, at *10 (Fed. Cl. Spec. Mstr. Aug. 3, 2023) (affording little weight to a statement made after a 17-month gap in treatment, where the petitioner told the treater the return to care was at the direction of the lawyer); *Duda v. Sec'y of Health & Hum. Servs.,* No. 19-31V, 2021 WL 4735857, at *8 (Fed. Cl. Spec. Mstr. Aug. 10, 2021) (affording less weight to later statements made for the purposes of litigation that directly conflicted with earlier reports to treaters).

I also do not find that the witness statements supplied by Petitioner and his mother successfully overcome the existing medical record discussed above. Petitioner's assertions of ongoing pain are largely uncorroborated, as his witness declarations do not describe with any particularity consistent pain during the relevant gap in care, or leading up until his February (or August) 2022 visit. *See generally* Exs. 1, 4, 24-25. Stating generally that Petitioner's pain began the day of his subject vaccination and continued

through the date the declarations were authored is insufficient to remedy the deficiencies relating to severity here. *See* Ex. 24 ¶¶ 2-3; *see also* Ex. 25 ¶¶ 5-6.

A description of pain occurring during the relevant treatment gap – and even somewhat after the six-month severity "cut-off" (December 10, 2021) – might well provide the substantiation presently lacking. But it has not been provided. Additionally, these declarations were authored for the purposes of litigation, after the filing of the instant claim, and some *even after the issuance of my Order to Show Cause*. I therefore do not give them significant weight in resolving severity.

The same can be said regarding the statements provided by Petitioner's treating psychiatrist. While the psychiatrist's original letter (from June 2022) referred to times from "August until December 2021" in which Petitioner continued to describe right shoulder symptoms and how Petitioner himself "thought it was SIRVA" (Ex. 4 at 2), the entirety of the record does not substantiate these representations. And the letter (like the witness statements previously described) was drafted in pursuit of litigation, and after Petitioner had retained counsel.

I also observe that psychiatric treatment records that have been filed herein wholly fail to corroborate the psychiatrist's earlier statements or an ongoing injury. For instance, although the treater maintains Petitioner mentioned his right shoulder pain sometime in the August to December 2021 period, those complaints are not included in the contemporaneous visit notes themselves. *See generally* Ex. 22. This is especially troublesome since the notes contain references to Petitioner's *other* reports of chronic spinal pain, as well as the various other complaints that Petitioner received care for during the same approximate timeframe (i.e., leg lesions, ulcers, and dental pain, Ex. 22 at 25, 27, 49).

Overall, the existing record memorializes less than *five* total medical visits for Petitioner's alleged shoulder pain – most of which occurred either: 1) well into the pendency of the instant claim or 2) after a *considerable* gap in care. And Petitioner did not link his pain to the subject vaccination during those visits. The record, therefore, does not contain sufficient evidence to establish that Petitioner likely suffered the residual effects of his alleged SIRVA injury beyond June 2021 – the month of vaccination.

## CONCLUSION

Petitioner has presented insufficient proof to establish the six-month severity requirement. Section 11(c)(1)(D). Therefore, he is ineligible to pursue compensation under the Program. In the absence of a timely-filed motion for review (see Appendix B to

the Rules of the Court), the Clerk of Court shall enter judgment in accordance with this Decision.[16]

      **IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[16] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.