# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1765V**

| | |
|---|---|
| JONATHON LEE JORDAN,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: September 30, 2026 |

*William E. Cochran, Jr., Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN , for Petitioner.*

*Ryan Pohlman Miller, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On October 10, 2023, Jonathon Lee Jordan filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq.[2] (the "Vaccine Act"), alleging that he suffered a right-sided shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus vaccine received on June 10, 2021. See generally Pet., ECF No. 1.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, he is not entitled to an award of attorney's fees or costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History and the Parties' Arguments

Following medical review of the claim, Respondent submitted his Rule 4(c) Report, arguing that injury severity – a threshold requirement for any claim filed in the Program – had not been demonstrated based on the record as it then stood. *See* Rule 4(c) Report at 12-18, ECF No. 18. I thereafter issued an Order to Show Cause in October 2024, noting that Respondent's severity objection was very likely to prevail unless Petitioner could better substantiate that his injury persisted for more than six months post-onset. Order at 2, ECF No. 24.[3]

In response, Petitioner submitted updated medical records (including those outside the pertinent gap in care relevant to resolving the severity issue), additional declarations, and a written brief. ECF Nos. 25-29. The parties completed their respective briefings thereafter (ECF Nos. 30-31), and on May 1, 2026, I issued a decision dismissing Petitioner's claim for his failure to establish the statutory six-month severity requirement. ECF No. 33.

On June 25, 2026, Petitioner filed a motion for attorney's fees and costs, requesting an award of $44,619.98 ($42,849.10 in fees plus $1,770.88 in costs). Motion for Attorneys' Fees and Costs ("Motion"), ECF No. 37. Furthermore, counsel for Petitioner filed a statement indicating that no personal out-of-pocket expenses were incurred.[4] ECF No. 37-3. In support of the existence of reasonable basis in this case, Petitioner (in a singular footnote) summarizes evidence showing that he complained of shoulder-related complaints within four days of the subject vaccination; that he mentioned this pain to his psychiatrist during the pertinent gap in care; that when he returned to care following the gap, he reported pain following receipt of his Tdap vaccine; and that his affidavit contains statements supporting his contention that the injury was ongoing. Motion at 2, n.1.

Respondent reacted to the Motion on June 28, 2026, stating that he defers to the Court regarding whether the statutory requirements for a fees award are met in this case. Response at 2-4, ECF No. 38. Petitioner did not file a reply thereafter.

---

[3] In my Order to Show Cause, I also addressed Respondent's argument that Petitioner had not proven he received the subject vaccination in the right arm, as alleged, and stated that Petitioner would likely overcome Respondent's objections regarding this element if he were to prevail on the threshold severity issue. *See* Order at 3 (citing Respondent's Rule 4(c) Report at 19-20).

[4] Counsel for Petitioner filed an unsigned General Order No. 9 stating Petitioner incurred no personal out of pocket expenses. ECF No. 37-3.

## II. Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petitioner be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[5] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

---

[5] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Resolving the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## III. Medical Records and Other Evidence

The records in this case establish that on June 10, 2021, Petitioner was brought to the emergency department ("ED") for a "motorcycle crash." Ex. 2 at 22. His complaints and physical findings pertained to head and facial lacerations, abrasions, and a broken left clavicle – including tenderness of the left shoulder and a large abrasion to his left elbow. *Id.* at 23. Petitioner was discharged with a prescription for Tylenol/ibuprofen and was told to follow up with his primary care provider. *Id.* at 24. Petitioner at this time received a Tdap vaccine in his right arm.[6] *Id.* at 85.

Three days later (June 13, 2021), Petitioner submitted a Vaccine Adverse Event Reporting System ("VAERS") report. Ex. 18 at 1. Petitioner noted that he received the subject vaccination on June 10, 2021, in his right arm, and that he experienced the onset of symptoms one day later, on June 11, 2021. *See id.* Specifically, Petitioner reported that he experienced fatigue, vomiting, and injection site pain; he also described his current

[6] The vaccination record reflects – in a computerized entry – that Petitioner received the subject vaccination in his left deltoid. Ex. 2 at 85. However, as previously noted, the bulk of evidence supports the conclusion that he more likely than not received the vaccination in his right arm, as alleged. *See,* e.g., Ex. 3 at 6; Ex. 18 at 1.

illness as a "collar bone fracture, road rash wounds all over including head from motorcycle fall." *Id.*

The following day (June 14, 2021), Petitioner had a telemedicine visit for "wound care and right shoulder pain 4 days after scooter[7] accident." Ex. 3 at 6. Petitioner reported that he was seen and treated in the ED for abrasions and a left clavicle fracture, and at that time, "[g]ot a Tdap right deltoid and has pain at site but not warm or red[, h]urts to lift arm[.]" *See id.* The treater's assessment included "[m]ultiple abrasions in healing phase[,] right deltoid pain after immunization[,] left clavicle fracture, [and traumatic brain injury]." *Id.* Petitioner was told to follow up as scheduled and that his "deltoid pain should resolve[,] can use ice and Motrin[,] Bactroban ointment if needed[.]" *Id.*

There is a subsequent *eight-month* gap in Petitioner's treatment for right shoulder pain (from June 2021 to February 2022), during which Petitioner had approximately *15* medical encounters, but the records from those instances do not document *any* concerns, findings, or treatment of a right shoulder injury, let alone one alleged or reported to have been associated with the subject vaccination. *See,* e.g., Ex. 16 at 9-11, 50-56 (June 18 and 29, 2021 encounters for wound care); Ex. 2 at 6-8 (a June 23, 2021 vascular examination of the lower extremities for ulcers); Ex. 3 at 9 (a July 7, 2021 telemedicine visit for nausea and vomiting, plus wound care); Ex. 16 at 68-89, 168 (July 13 and August 10, 2021 encounters for wound care); Ex. 11 at 12-16 (an August 27, 2021 encounter for an earache, tooth pain, and asthma prescription refill); Ex. 14 at 3-4 (a September 1, 2021 encounter for ear and facial pain); Ex. 10 at 404-08 (a September 3, 2021 encounter for an abscess and ear pain, with a normal examination of the extremities); Ex. 3 at 12 (a September 6, 2021 telemedicine encounter for a concern of scabies); Ex. 13 at 21-23 (a December 23, 2021 encounter for potential STI exposure); Ex. 8 at 16-18 (a January 22, 2022 encounter for an upper respiratory infection); Ex. 8 at 19-20 (a January 23, 2022 encounter for nasal congestion); Ex. 3 at 18 (a February 18, 2022 telemedicine encounter for a sinus infection and refill of asthma prescription).

Then, on February 28, 2022,[8] Petitioner sought care at the ED following a fall on his right side while walking his dog. Ex. 5 at 6. Specifically, Petitioner reported "falling directly onto his right side of his face[,]" some chest discomfort, along with "some right

[7] This is the only reference to Petitioner's involvement in a "scooter" accident. In other records, Petitioner's treaters refer to Petitioner's involvement in a "motorcycle" crash. *See,* e.g., Ex. 2 at 22. Petitioner himself describes the vehicle differently on separate occasions, including as a "motor bike" or a "motorcycle." *See* Ex. 1 (Petitioner's affidavit describing his "motor bike crash"); *see also* Ex. 18 at 1 (Petitioner's VAERS report describing a "motorcycle fall"). The vehicle thus appears to be akin to a motorcycle.

[8] Prior to this visit (on February 23, 2022), it appears that Petitioner signed a consent form for the collection of his medical records by counsel. Ex. 2 at 2. Then, on March 25, 2022, Petitioner's counsel collected Petitioner's medical records in connection to a matter entitled, "Jonathon Lee Jordan v. DHHS." *Id.* at 1. It thus appears Petitioner had retained counsel by late February of 2022.

shoulder discomfort and a mild 1-2 out of 10 headache." *Id.* at 9. A physical examination revealed facial bruising and abrasions containing gravel, plus full range of motion ("ROM") in the right shoulder but some tenderness with movement that radiated down the arm. *Id.* at 10-11. The treater's assessment noted that Petitioner "complain[ed] of some right shoulder pain that appears to be chronic possibly worsening after his fall." *Id.* at 12. The treater did not elaborate on Petitioner's "chronic" pain, nor did Petitioner link his right shoulder pain to the June 2021 vaccination during this visit.

On April 6, 2022, Petitioner returned to the ED reporting a one-week history of lethargy and a headache, plus lower extremity warmth and swelling for the past 24 hours. Ex. 10 at 451. The clinical impression was left leg cellulitis, for which he spent one night in the hospital. *Id.* at 451-56. During that time, Petitioner could move all extremities but made no mention to his right shoulder, specifically. *Id.* at 459.

Later in April (on April 26, 2022), Petitioner went back to the ED for his right elbow after sustaining another fall. Ex. 15 at 25. He reported that he tripped while walking and landed on his right elbow; he could "move his arm with full [ROM]," but was "concerned with edema and discoloration to it." *Id.* An examination of the right elbow was performed, and revealed swelling, effusion, and tenderness. *Id.* at 28. The treater assessed Petitioner with a contusion of his right elbow and traumatic bursitis; an x-ray was normal. *Id.* at 29. Petitioner did not mention his right shoulder or his 2021 vaccination at this visit.

Thereafter, on May 12, 2022, Petitioner saw an orthopedic nurse practitioner for a consultation of his right elbow pain. Ex. 6 at 7, 9. He reported that "on 4/23/2022 he was in his yard . . . yellowjacket was swarming him so he ran . . . fell landing completely on the lateral aspect of his right elbow" and swelling occurred immediately. *Id.* at 9-10. He was concerned about bruising and swelling. *Id.* at 10. An examination was limited to the "right upper extremity" and the assessment included right elbow pain and a traumatic hematoma of the right elbow. *Id.* Petitioner also noted he had "been having some shoulder pain" and "would like to see [a] shoulder specialist." *Id.*

On June 15, 2022, Petitioner called an orthopedist to schedule an appointment (to be held on July 5, 2022), for "rt [sic] shld [sic] pain[.]" Ex. 21 at 80. The appointment was rescheduled for July 11, 2022, but then cancelled after Petitioner mistook the time of the appointment. *Id.* at 72. After rescheduling the appointment again for August 2, 2022, Petitioner did not attend the encounter; it was cancelled after he was 30 minutes late. *Id.* at 71. Petitioner's August 23, 2022 visit was also cancelled after Petitioner was a "no show." *Id.* at 68.

It was not until August 31, 2022[9] (now over 14 months since first seeking care for shoulder pain attributable to the subject vaccination), that Petitioner again specifically sought treatment for right shoulder pain he reported was vaccine-related, and that had allegedly persisted for "over 1 year." Ex. 7 at 30. Specifically, Petitioner now claimed that he "thinks the pain came from the Tdap vaccination" (that he felt "coerced" into receiving), and that the "pain developed within an hour or so and has not let up since." *Id.* The orthopedist also noted that Petitioner "was in a motorcycle accident on June 10, 2021." *Id.* Petitioner stated he had been "hesitant to seek medical care because he does have a history . . . of opiate addiction and feels some distress towards physicians." *Id.* He also reported that he had "discussed this shoulder issue with his psychiatrist who recommended he see a specialist." *Id.*

The orthopedist "tried to address [Petitioner's] concerns about the possibility of his tetanus vaccine as it relates to his shoulder pain[;]" and although the treater could not "completely rule it out as a possibility[,]" the treater noted Petitioner "had a fairly traumatic high-energy motorcycle accident the same time which could have agitated his right shoulder even though his left clavicle was broken." Ex. 7 at 33. The treater recommended Petitioner undergo treatment with physical therapy for his adhesive capsulitis, but Petitioner never attended such treatment. *Id.* Petitioner did not attend any additional treatment thereafter.[10] No additional medical records have been filed.[11]

Through witness declarations (some specifically drafted after my Order to Show Cause highlighting the specific deficiencies in the record related to severity), Petitioner maintained that he could establish the Act's six-month requirement. For instance, in his first affidavit (drafted in September 2023), Petitioner generally attested that he began experiencing right shoulder pain within hours of his receipt of the subject Tdap vaccination, and he has "not returned to baseline." Ex. 1 ¶¶ 5, 7.

---

[9] The same day as this visit, Petitioner's counsel submitted an additional medical record request to this provider (Ex. 7 at 2-3), further supporting the conclusion that Petitioner had retained counsel by this date.

[10] However, Petitioner contacted his orthopedist on September 1, 2022, to state that he reviewed the August 31st visit notes and wanted to correct the entry to reflect that he only had anxiety with hospitals, not doctors. Ex. 21 at 29.

[11] While Petitioner submitted updated medical records in response to my Order to Show Cause (Ex. 21), such records do not appear to contain new visit notes but rather seem to repeat past medical encounters. The records also contain notations showing that on March 30, 2024, Petitioner made an orthopedic appointment for April 30, 2024, to follow up for his right shoulder, and then it was rescheduled for June 18, 2024, but Petitioner did not ultimately attend this or any additional visits. Ex. 21 at 9, 18.

Petitioner's mother submitted an affidavit on his behalf, also authored in September 2023. Ex. 17.[12] Petitioner's mother attested that "[d]uring the past year" – or dating back to September 2022 – Petitioner had experienced "problems with his use and mobility of his right arm." *Id.* ¶ 28.

Later, and in direct response to my Order to Show Cause, Petitioner and his mother submitted additional declarations (both authored in January 2025). Exs. 24-25. Petitioner stated that his right shoulder pain "continued for six months and beyond" and was present prior to the care he received beginning in February 2022. Ex. 24 ¶¶ 3-7. Petitioner addressed his February 28, 2022 encounter (the first following his eight-month gap in care), and explained that while he sought care due to a fall, he "was still having pain in [his] right shoulder from the June 10, 2021 vaccination prior to the fall[.]" *Id.* ¶ 4. Petitioner did not believe his shoulder was injured from said fall, but he "was hoping to also get treatment for [his] right shoulder pain." *Id.* Likewise, Petitioner explained that when he sought care following another fall on April 26, 2022, he "was still having pain in [his] right shoulder . . . prior to the fall[.]" *Id.* ¶ 5.

Additionally, Petitioner's mother clarified that Petitioner's "problems and use of mobility of his right arm was not limited to the year preceding September [2023]," the year her prior declaration was authored. Ex. 25 ¶¶ 2-4. Rather, she attested that Petitioner experienced right shoulder pain the day he received the subject vaccination and "[t]he pain never went away" but "continued . . . through the date [she] signed [her] September 28, 2023 affidavit." *Id.* ¶¶ 5-6. No additional witness declarations or affidavits have been filed.

Finally, Petitioner's psychiatrist (with whom he was in the care of at the time of his alleged vaccine injury) provided a statement and records in connection with the instant claim. Exs. 4, 22. In the June 2, 2022 letter drafted by Petitioner's psychiatrist directly to Petitioner's counsel (and filed along with the instant Petition), the treater wrote that Petitioner called her on the day of his June 2021 motorcycle accident. Ex. 4 at 1-2. According to Petitioner's psychiatrist, Petitioner told her about his receipt of the subject vaccination at the hospital that day, and stated his belief that the hospital coerced him into receiving it. *Id.* at 2. Additionally, "[a]t his office visit in July 2021," Petitioner "was complaining about pain at the injection site where they gave him a Tdap vaccine." *Id.* The treater wrote that from "August until December of 2021," Petitioner continued to "describe

[12] Petitioner's mother's affidavit included a typed copy of her assertions, followed by a handwritten copy repeating the same statements. *See* Ex. 17 at 1-4, 6-11. The affidavit also included a sketch, seeming to depict Petitioner's mother's vantage point while watching Petitioner receive the subject vaccination. *Id.* at 13. And finally, the affidavit included a printout of driving directions (of unknown significance), as well as photographs of a man (seemingly Petitioner) in the hospital following an accident. *Id.* at 5, 14-15.

how his right shoulder hurt a lot and thought it was SIRVA[13] from the shot he was given[.]" *Id.* Petitioner's psychiatrist noted that Petitioner did not seek treatment "because he thought they might do surgery or give him pain meds [sic] and he wanted to maintain his recovery from pain meds [sic]." *Id.*

Additionally, in response to my Order to Show Cause, Petitioner submitted the full treatment records from his visits with his psychiatrist. Ex. 22.[14] Within these records, Petitioner's psychiatrist wrote a note directly addressed to Petitioner's counsel, dated December 2, 2024. *Id.* at 1. The treater wrote that she had received counsel's request for records but that all records (dating back to 2019) had been previously disclosed. *Id.* More so, the psychiatrist explained that she had been treating Petitioner for opiate dependence, anxiety, and ADHD, "not chronic pain[.]" *Id.* (emphasis in original). The treater emphasized that she had "not examined him for and am not treating him for his report of right deltoid & shoulder pain which he associated with a vaccination." *Id.* The records do not contain any mention of or reference to Petitioner's right shoulder pain aside from that entry – although the records contain references to Petitioner's reports of chronic spinal pain in relation to his history of scoliosis, dental pain, and ulcers/lesions on his legs. *See generally id.* at 10-79. No additional evidence has been filed.

## ANALYSIS

The record shows that this claim lacked a reasonable basis when filed - and one never materialized thereafter. In particular, the filed record fails to contain any support for a vaccine-related shoulder injury that persisted long enough to meet the Act's six-months severity requirement. *See* 42 U.S.C. § 300aa-1 l(c)(l)(D)(i). Instead, the contemporaneous medical records establish a report of vaccine-related injection site pain in a June 13, 2021 VAERS report and only a singular telemedicine visit (on June 14, 2021, thus just *three-to-four days* post vaccination), at which time Petitioner linked his shoulder pain to the subject vaccination. Ex. 3 at 6; Ex. 18 at 1 (reverse order). Petitioner did not receive recommendations for additional treatment after that time but rather was told his "deltoid pain should resolve." Ex. 3 at 6. The contemporaneous medical records thus support a post-vaccination injury that persisted for less than one week – with all treatment occurring in that short space of time.

Petitioner subsequently did not again seek care for his right shoulder symptoms until February 2022 - eight months later, and only after a fall onto his right side. Ex. 5 at 6. And, he did not relate his allegedly ongoing pain to the subject vaccination until six

[13] By this time, none of Petitioner's treaters described his injury as SIRVA or assessed him with SIRVA.

[14] The records are also accompanied by a records request from Petitioner's counsel to Petitioner's psychiatrist, dated November 12, 2024. Ex. 23 at 1-2.

months after that, on August 31, 2022. Ex. 7 at 30. Even though Petitioner linked his pain to his original injury on that date, his treating orthopedist could not rule out either that the vaccination or Petitioner's June 10, 2021 motorcycle crash (the same incident that prompted his receipt of the subject Tdap vaccine) caused his ongoing right shoulder injury. *See id.* at 33. Petitioner did not return for any additional treatment for his right shoulder following this August 2022 visit. Thus, this stand-alone August 2022 visit (the only one that referenced the original alleged vaccine-related shoulder pain following the gap in care), fails to provide sufficient support for an injury that continued up to this date, as Petitioner contended.

Petitioner's reports of ongoing pain following the gap in care (i.e., from February 2022 and later, including the August 2022 visit), cannot be afforded the same weight as medical records created closer-in-time to Petitioner's receipt of the subject Tdap vaccine (that supported an injury that would resolve on its own – Ex. 3 at 6), as he had already retained counsel by this time.[15] For instance, the record shows that by February 23, 2022, Petitioner had signed an authorization form, granting his counsel permission to collect his medical records; that request was served on facilities on March 25, 2022. Ex. 2 at 1-2. While the decision to pursue litigation does not *per se* render all of a claimant's subsequent efforts at treatment suspect, it does mean the reliability of statements made about fact issues to be adjudicated might be fairly called into question, especially to the extent the statements are not contemporaneous with the event at issue. *Reusser v. Sec'y of Health & Hum. Servs.,* 28 Fed. Cl. 516, 523 (1993) ("written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later"); *Mueller v. Sec'y of Health & Hum. Servs.,* No. 06-775V, 2011 WL 1467938, at *9 (Fed. Cl. Spec. Mstr. Mar. 16, 2011) ("[m]emories are generally better the closer in time to the occurrence reported and when the motivation for accurate explication of symptoms is more immediate."); *Thelen v. Sec'y of Health and Hum. Servs.,* No. 90-22V, 1991 WL 38084, at *11 (Fed. Cl. Spec. Mstr. Mar. 6, 1991) (stating that the pressures of litigation may affect memory).

The same can be said regarding Petitioner's reliance on his psychiatrist's June 2022 letter to support his position that his injury persisted for more than six months post onset (and thus supporting a finding of reasonable basis herein). But that letter was drafted only after Petitioner had retained counsel, and was directed to counsel, seemingly

[15] Special masters have afforded less weight to statements made to treating physicians when made in the context of litigation, or those made after a petitioner began to suspect he might have a Program claim. *See,* e.g., *Rastetter v. Sec'y of Health & Hum. Servs.,* No. 19-1840V, 2023 WL 5552317, at *10 (Fed. Cl. Spec. Mstr. Aug. 3, 2023) (affording little weight to a statement made after a 17-month gap in treatment, where the petitioner told the treater the return to care was at the direction of the lawyer); *Duda v. Sec'y of Health & Hum. Servs.,* No. 19-31V, 2021 WL 4735857, at *8 (Fed. Cl. Spec. Mstr. Aug. 10, 2021) (affording less weight to later statements made for the purposes of litigation that directly conflicted with earlier reports to treaters).

in an effort to bulwark the lack of record support for six-months sequelae contained in the contemporaneous medical records.

In addition, the letter otherwise wholly failed to evince an injury that was ongoing from August-December 2021, as the treater contends, which would encompass the six-month severity "cut-off" date in December 2021. Rather, the letter generally purports that from August to December 2021, Petitioner complained to this treater of ongoing shoulder issues, and that he himself "thought it was SIRVA." Ex. 4 at 2. But, this letter did not describe with more particularity an injury that persisted during the over eight-month period, nor is it corroborated by the contemporaneous medical records later submitted by this same treater.

The records provided by the same treater (and only in response to my Order to Show Cause, highlighting the critical deficiencies in the record related to severity) also fail to support an injury that was ongoing from August to December 2021. For instance, although the treater asserted that Petitioner mentioned his right shoulder pain sometime in that timeframe, those complaints are not included in the contemporaneous visit notes themselves. *See generally* Ex. 22. Although this treater is a psychiatrist, a type of treater to whom Petitioner may not have reasonably mentioned musculoskeletal complaints even if present, the lack of mention of shoulder complaints is especially troublesome in this case, as the records contain references to Petitioner's *other* reports of chronic spinal pain, as well as the various other complaints that Petitioner received care for during the gap in shoulder-related care (i.e., leg lesions, ulcers, and dental pain that are contained in the other records, Ex. 22 at 25, 27, 49). It thus strains credulity to think that Petitioner's complaints of shoulder pain were thus inexplicably omitted in these records.

The record thus contains insufficient evidence linking Petitioner's later right shoulder pain to his vaccination, other than his and his mother's personal narratives *generally and without detail* documenting his belief that the events were connected – expressed months to years after the Petition was filed and some submitted in direct response to my 2024 Order to Show Cause. Petitioner's assertions of ongoing pain are largely uncorroborated, as his witness declarations do not describe with any particularity consistent pain during the relevant gap in care, or leading up until his February (or August) 2022 visit. *See generally* Exs. 1, 4, 24-25. Additionally, these declarations were authored for the purposes of litigation. I therefore do not give them significant weight in resolving whether this claim had a reasonable basis when filed.

Reasonable basis is admittedly an exceedingly-easy test to meet, and many claims that look facially weak even at the outset of filing can pass it. But here, there was never any substantive evidence that the claim could meet the severity requirement – no objective record proof. Counsel took a risk in accepting this claim, and while he may have

acted in good faith, he bears the financial burden of that risk in pursuing such a baseless claim for so long.

## Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.